DE MULL *v.* CITY OF LOWELL.

1. TOWNSHIPS—ORDINANCES—JUNK-YARD PERMITS.

Junk-yard permit was properly held valid by trial judge notwithstanding the application for the permit did not contain the exact wording of the township ordinance, where the application contained substantially the same information and had printed therein a resume of the pertinent ordinance (CL 1948, §§ 445.451–445.453).

2. SAME—JUNK-YARD PERMIT—SIGNATURE.

A township permit to operate a junk yard was not invalid where the permit was granted pursuant to action taken by the township board, notwithstanding the permit was signed by the building inspector rather than the township clerk, since presumably the township clerk had knowledge of the board's action as he was the clerk of the board and the signing of the permit was purely and simply a ministerial act (CL 1948, §§ 41.74, 445.451–445.453).

3. MUNICIPAL CORPORATIONS—JUNK YARD—NONCONFORMING USE.

Plaintiff was properly found to have been operating a junk yard as a nonconforming use at time city's zoning ordinance restricting the property to residential use became effective, where, after obtaining from the township board a permit to operate the junk yard at that location, he had purchased the premises and some automobiles, ordered fence posts, started construction of a 7′ fence, and obtained a dealer's license for used vehicles, since he had performed substantial work in utilizing the property pursuant to conditions of the permit granted while the property was township property and before adoption of the zoning ordinance by city of which it became a part after he had commenced operations (CL 1948, §§ 445.451–445.453).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Zoning §§ 92, 93, 178 *et seq.*
[3] 58 Am Jur, Zoning §§ 92, 93.
[4] 58 Am Jur, Zoning §§ 146–154.
[5] 28 Am Jur, Injunctions § 299.

4. SAME—ZONING ORDINANCE—NONCONFORMING USE—DURATION OF CONTINUANCE.

A city or village may permit the continuance of a nonconforming use when adopting a zoning ordinance but may not terminate such use solely by permitting its continuance for a specified period of time (City of Lowell Zoning Ordinance, § 9A[1]).

5. COSTS—JUNK-YARD PERMIT—ZONING ORDINANCE—CONTINUATION OF NONCONFORMING USE.

No costs are allowed in suit to enjoin the revocation of a junk-yard permit and to declare void a provision of city's zoning ordinance imposing a time limitation on nonconforming use (CL 1948, §§ 41.74, 445.451–445.453; City of Lowell Zoning Ordinance, § 9A[1]).

Appeal from Kent; Hoffius (Stuart), J. Submitted October 5, 1962. (Docket No. 33, Calendar No. 49,517.) Decided December 3, 1962.

Bill by Harold De Mull, doing business as Harold De Mull Auto Parts, against the City of Lowell, a municipal corporation, its mayor, clerk, building inspector, and councilmen, to enjoin revocation of license or permit to operate junk yard and to invalidate a section of the city's zoning ordinance terminating nonconforming use within 3-year period. Decree for plaintiff but with provisions upholding time limitation clause. Plaintiff appeals. Defendants cross-appeal. Affirmed as to plaintiff's right to continue business and reversed to declare void the time limitation on nonconforming use.

*Rhoades & Garlington* (*William J. Garlington,* of counsel), for plaintiff.

*Vander Veen, Freihofer & Cook* (*Donald F. Osterhouse,* of counsel), for defendants.

BLACK, J. Appeal and cross-appeal from a decree entered in the Kent circuit upholding plaintiff's nonconforming use of his property as against the

defendant city's zoning ordinance and upholding as against plaintiff that part of the ordinance which, by specific time limitation, will terminate such nonconforming use July 28, 1963.*

As in most like collisions of the municipal power of zoning with private rights of use of property, the issues are fact-complicated and subject to disputatious inferences and conclusions depending on professional as well as lay point of view. All such issues were considered with painstaking care by the chancellor and, since his opinion portrays such facts and variables with surpassing comprehension, we are impelled to quote without break that portion thereof which is to follow, leaving for separate and ensuing consideration the salient issue upon which the case rode up by appeal, that is, whether the defendant city was possessed of legal and constitutional right to terminate in 3 years—by ordinance made effective after the fact of establishment and operation thereof—plaintiff's apparently lawful business.

The chancellor's opinion commences and continues:

"This is an equity suit in which the plaintiff owner of an automobile junk yard in the city of Lowell, seeks to have certain action by the city council 'revoking or declaring invalid a license or permit to operate said junk yard' be held null and void and to have this court enjoin the city of Lowell from taking any action pursuant to said resolution which would interfere with the operation of said junk yard. By amended bill of complaint the plaintiff seeks to have section 9A of the zoning ordinance of the city of Lowell declared null and void and without any force or effect and to enjoin the city of Lowell from enforcing such section.

---

* The ordinance went into effect July 28, 1960. By section 9A nonconforming uses of the class enjoyed by plaintiff were sentenced for abolition at the expiration of 3 years from such effective date.

"The junk yard in question is located in what is presently the city of Lowell and was until March 11, 1960, a part of the township of Lowell. On February 2, 1960, plaintiff applied to the township board on a form furnished by the township for a junk-yard license. The township board had on October 25, 1957, adopted a resolution to provide for the licensing of junk yards pursuant to CL 1948, §§ 445.451–445.453 (Stat Ann 1959 Rev §§ 19.731–19.733). The resolution adopted by the township board provided for the township board to license the operation of junk yards. It provided a particular type of form that should be used; and further provided that the clerk should issue the license applied for. It further provided certain conditions under which the license should not be granted and that the junk yard should be fenced in with a 7-foot high fence within 60 days after the first annual license was granted. At the township board meeting on February 2, 1960, the following resolution was adopted:

" 'A motion was made by Simon Wingeier supported by Ernest Roth that the township building inspector issue a junk-yard license to Mr. Harold De Mull on M–21 west of Lowell. Mr. De Mull has to build a 7-ft. fence 300 ft. across the front of his property and 600 ft. on the west on the Nash avenue side and later as business increases he is to extend his fence on the east and west sides and will eventually place a fence on the north line of property. Mr. De Mull agreeing to all the requirements the license was issued to him. The motion was carried.'

"Pursuant to such resolution, the building inspector of the township granted the permit in the following form:

" 'I John Fahrni grant Harold De Mull right to operate junk yard as per township meeting requirement.'

"Thereafter and on February 10, 1960, plaintiff entered a written contract for the purchase of the premises used for the instant junk yard. On February 15, 1960, plaintiff entered into a land contract for

the purchase of said premises. The testimony showed that the plaintiff also bought some automobiles and ordered posts for the erection of the fence surrounding the junk yard prior to the date upon which this portion of Lowell township became the city of Lowell. On March 11, 1960, the city of Lowell was created by affirmative vote of the proper electors, and this portion of Lowell township became a part of the city. On March 15, 1960, plaintiff obtained a dealer's license for used vehicles. At the expiration of 60 days after the issuance of the license on February 2, 1960, it is agreed that the fence was not erected, although, it is the claim of the plaintiff that he had started the fence construction the last week of March. On April 5, 1960, plaintiff was notified by the defendant city that it was possible that the property contemplated to be used as a junk yard would be zoned and that it would be 'inadvisable' for him to proceed further with this project until the zoning was determined.

"Thereafter, and on May 5, 1960, plaintiff was notified by letter from the city attorney that the license heretofore granted by the township board was invalid for 2 reasons: (1) the application for same was not in the proper form; (2) the resolution provided for a 7-foot high fence within 60 days after the first license was granted, and such fence was not completed on that day.

"Thereafter, the city of Lowell adopted a zoning ordinance which became effective on July 28, 1960, and which provided that the area covered by this junk yard was zoned residential. The ordinance further provided, as follows:

" 'Section 9A. Any lawful building or use of premises existing at the time of the enactment of this ordinance or any subsequent amendment thereof, applying to such buildings or use of premises, may be continued although such buildings or use of premises do not conform to the provisions thereof, provided there is no increase or enlargement of the area or

space occupied by or devoted to such nonconforming use, and except as follows:

" '1. The nonconforming use of a building or premises, for the purpose of the storage of contractors machinery and equipment, the storage of pipe or any other equipment or parts, the sale of new or used farm machinery and equipment and the dismantling or wrecking of automobiles and other vehicles or machinery of any kind, or for the purpose of storing junk, scrap iron and scrap material including dismantled and wrecked automobiles and other vehicles, shall be discontinued and the building or premises thereafter devoted to a use permitted in the district, in which such building or premises is located within 3 years from the effective date of this ordinance.'

"This suit was started on May 12, 1960, before the zoning ordinance was adopted, but by proper amendment of pleadings the issue over section 9A was properly pleaded. The instant junk yard is located on Nash avenue in the city of Lowell, approximately 264 feet north of highway M–21. The junk yard has a frontage on Nash avenue of approximately 305 feet and a depth of approximately 813 feet. The first cars were placed on the lot about April 10, 1960, and the first cars sold on the lot were sold April 14, 1960.

"Counsel for the city of Lowell claimed that the motion or resolution of February 2, 1960, was not in conformity with the junk-yard ordinance which had been adopted in 1957. Counsel urged, therefore, that the permit granted by the township of Lowell was invalid and void. I am unable to agree with counsel for the city of Lowell. The application for the junk-yard permit was in substantial compliance with the ordinance. It is true it did not have the exact wording contained in section 3(1), but it contained substantially the same information and even had a resume of the junk-yard ordinance printed into the application.

"Counsel for the city further urged that the junk-yard license was granted by the building inspector instead of the township clerk as required by the 1957 junk-yard ordinance. The township clerk is the clerk of the township board according to the statute, CL 1948, § 41.74 (Stat Ann 1961 Rev § 5.66), and therefore, must have had cognizance of the action of the township board. The mere fact that the permit itself was signed by the building inspector as provided by the resolution of February 2, 1960, should not defeat the granting of the permit. It was purely and simply a ministerial act. The granting of this permit, although not in exact compliance with every detail of the ordinance, was in substantial compliance and this should not defeat the granting of such license.

"The next question to be considered is the matter contained in the city attorney's letter of May 5, 1960, with regard to the fact that the 7-foot fence was not installed and completed within 60 days of the issuance of the permit. The plaintiff, however, had done substantial work in preparation for the use of the premises. The testimony showed that he performed the following acts: (1) entered an agreement of purchase; (2) executed land contract for purchase of the premises; (3) purchased some automobiles; (4) ordered fence posts; (5) obtained the dealer's license for used vehicles; (6) started construction of the 7-foot fence. It was said in *City of Lansing v. Dawley*, 247 Mich 394 at page 396, as follows:

" 'In the exercise of its police power the city of Lansing had a right to enact the ordinance in question, but this right was subject to vested property interests acquired before its enactment. The defendant contends that he has such interests and that he acquired them in reliance on a valid permit. *We would be inclined to agree with him if before the enactment of the ordinance he had done anything of a substantial character towards the construction of the building.*' (Emphasis added.)

"It is apparent from this case that if the owner had undertaken substantial construction of the building for which a permit was issued prior to the adoption of the zoning ordinance the court would have permitted the use of the premises.

"The work in the *City of Lansing Case* was not undertaken until 3 months after the ordinance had gone into effect. In the instant case it is apparent that from the time the application was made and the permit issued the owner performed substantial work in utilizing the property in accordance with the permit.

"At the time that the junk yard started operating which was about the middle of April, 1960, there was no zoning law for the city of Lowell covering this area. It is assumed that there was no zoning for the township of Lowell prior to the time that this portion of the township became a city, because no such township zoning law was introduced in evidence at the trial.

"From the foregoing it is apparent that at the time the zoning ordinance was adopted for the city of Lowell the plaintiff was operating a junk yard as a nonconforming use. Section 9 of the city zoning law specifically permits the continuation of a nonconforming use 'provided there is no increase or enlargement of the area or space occupied by or devoted to such nonconforming use.' The exception to this provision, however, pertains to junk yards and requires by section 9A(1), the discontinuance of the use of such premises within 3 years from the effective date of this ordinance. This brings us, therefore, to a consideration whether section 9A(1) is constitutional. Nonconforming uses have since the adoption of the zoning ordinances generally been permitted to continue. Various courts have adopted different rules concerning the enlargement and expansion of nonconforming uses. The courts of Michigan have generally protected nonconforming uses and restricted their expansion or enlargement. *Austin* v. *Older,* 283 Mich 667."

The foregoing discloses definite holding by Judge Hoffius that plaintiff's precedently established business was lawful, that plaintiff had properly applied for and duly obtained a valid permit authorizing the carrying on of such business, and that plaintiff was entitled to relief as prayed subject only to the limitational effectiveness of quoted section 9A of the ordinance. The judge's opinion speaks for itself and fully warrants affirmance of that part of the entered decree which adjudges that plaintiff's said business constitutes a legally protectible nonconforming use. This disposes of defendants' cross-appeal.

We differ, though, as this ordained 3-year death sentence for nonconforming uses comes to fair scrutiny. Whatever the law may be in other States, law stemming as it does from specific and variant statutory zoning enactments and judicial construction thereof,[*] the fact remains that the cities of Michigan have not as yet been authorized, by requisite legislative act, to terminate nonconforming uses by ordinance of time limitation. The question is governed by PA 1947, No 272, amending our municipal zoning statutes by adding new section 3a, reading as follows (CL 1948, § 125.583a [Stat Ann 1958 Rev § 5.2933 (1)]):

"Sec. 3a. The lawful use of land or a structure exactly as such existed at the time of the enactment of the ordinance affecting them, may be continued, except as hereinafter provided, although such use or structure does not conform with the provisions of such ordinance. The legislative body may in its discretion provide by ordinance for the resumption, restoration, reconstruction, extension or substitution of nonconforming uses or structures upon such terms and conditions as may be provided in the ordinance. In addition to the power granted in this section, cities and villages may acquire by purchase,

---

[*] Judge Hoffius relied exclusively on cases decided in other States.

condemnation or otherwise private property for the removal of nonconforming uses and structures: Provided, The property shall not be used for public housing. The legislative body may in its discretion provide that the cost and expense of acquiring such private property be paid from general funds, or the cost and expense or any portion thereof be assessed to a special district. The elimination of such nonconforming uses and structures in a zoned district as herein provided is hereby declared to be for a public purpose and for a public use. The legislative body shall have authority to institute and prosecute proceedings for the condemnation of nonconforming uses and structures under the power of eminent domain in accordance with the laws of the State or provisions of any city or village charter relative to condemnation."

It will be noted that section 3a includes no authorization for elimination of a nonconforming use by an ordinance of time limitation. The legislature did, in fact, carefully refrain from enactment of any such authorization, and the documented evidence of its pertinent intent appears in OAG 1947–1948, No 146, dated March 7, 1947. That opinion, prepared by Assistant Attorney General Clapperton, discloses that the senate, contemplating this same section 3a as then drafted and debated, formally requested an official opinion respecting the constitutionality of such initial draft. That body received prompt negative answer. The opinion starts:

"The senate has unanimously requested our opinion on the constitutionality of Senate Bill No 74 attached hereto. The question arose as to whether the bill might be invalid in that it would permit a city counsel to control if not seize and condemn property for the benefit of a certain class of people in the community, thus constituting class legislation. They also ask for comments on any other constitutional questions that may occur.

"The bill adds a new section, section 3a, to the city and village zoning act, PA 1921, No 207, as amended. The new section provides in part as follows:

" 'The lawful use of land or a structure exactly as such existed at the time of the enactment of the ordinance affecting them, may be continued, except as hereinafter provided, although such use or structure does not conform with the provisions of such ordinance. The legislative body in cities and villages may provide for the removal of such nonconforming uses or structures by specifying a reasonable period or periods in which such removal shall be required. In determining such periods consideration shall be given to the type of use and the type, age and other characteristics of the structures.' ";

and concludes:

"It is our opinion that Senate Bill No 74, in delegating to cities and villages the power to provide for removal of nonconforming uses by specifying a reasonable period based on type of use and the type, age and other characteristics of structures, would be held invalid, since it contemplates ordinances which would set definite periods of time."

The legislature heeded the foregoing opinion and meaningfully eliminated, from then drafted section 3a, authorization to do that which the defendant city has attempted to ordain. Thus it must be held that section 9A of the city's zoning ordinance is invalid for want of legislative warrant.

So far the legislature has permitted ordinances providing only for resumption, restoration, reconstruction, extension, or substitution of nonconforming uses. It has withheld permission to destroy them, by time limitation or otherwise. Thus the presented constitutional question, aimed as it is at section 9A, requires no answer. So far as concerns the asserted public need for "getting rid" of noncon-

forming uses, it is sufficient to say that the cities of Michigan have an undoubted right to purchase or condemn and thus abate. See said section 3a.

Affirmed as indicated, and reversed as to that portion of the decree which upholds said section 9A in its application to plaintiff and his property. No costs.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.