Domenick L. Gabrielli, J.
In this article 78 proceeding, the matter was returned to Special Term to take proof relative to the status of certain lands, as set forth in paragraph “ 3 ” of the petition and described in Exhibit “ 0 ” attached thereto. Because of issues created at the time the matter was first before Special Term and of the impossibility of deciding these issues upon the pleadings and exhibits alone, it became necessary to hear the evidence of the petitioner and the respondents.
The sole question presently before the court is whether this property is to be considered as having attached to it, the status of a “ non-conforming use ”, as it relates to the Zoning Ordinance of 1948, which placed the lands in a residential zone while the remainder of the original tract was zoned industrial.
*12 The order of Special Term (39 Mise 2d 627, 634), provided that the matter be returned for the purpose of taking ‘ ‘ proof and for the presentation and submission of evidence as to (a) what use this particular land was put to prior hereto, (b) as to the character of the neighborhood at the present time and at all times prior hereto, (c) as to the evidenced intent of the petitioner as to the use of this land, when the same was purchased, (d) the character, scope and area of the operations of the petitioner, as well as all other facts which would permit a determination to be made as to whether this land is susceptible to the theory of lay that there was and is a proper expansion or extension of a nonconforming use.”
The court has found that the petitioner purchased its first lands from one Bécker in 1922 for use in its stone quarrying business; and that in 1925 it purchased the premises in question. It is conceded that the petitioner conducted its operations on part of the entire tract purchased, since the date of the purchase of the whole tract.
When, in 1948, the respondent adopted a zoning ordinance, it placed the questioned parcel in a residential zone. This parcel is 1,520 feet in length and 175 feet in width.
On February 13,1950 the respondent town adopted an excavations ordinance which regulated the procedures to be followed in obtaining a permit to excavate. The petitioner has professed its willingness and ability to comply with the requirements thereof, and had previously made application for such a permit.
It further appears that the petitioner’s rate of production was constantly increasing, prior to its purchase of the questioned lands in 1925 and in order to provide for present and future needs, it then contracted for and purchased the property known as the Bennett farm. This consisted of 34% acres to the north of the New York Central Railroad right of way, as well as some 47 acres to the south thereof. It is from this latter parcel that the questioned area was carved out and placed in a residential zone.
It further appears that the purchase of the Bennett farm was made for the specific purpose of obtaining adequate reserves, of dolomite rock for future operations. In addition, the testimony revealed that the portion to the north of the railroad right of way (34%-acre parcel) has been nearly exhausted.
Of further interest, it was shown that, at the time of the purchase of the whole tract, there were only isolated farm houses in the general vicinity. Since that time there has been *13 some building of homes but nowhere in close proximity to the questioned lands. In addition, the petitioner had constructed a high berm for everyone’s protection and convenience.
Although not controlling, it further appears that the petitioner has a large and substantial investment in land and buildings.
There was also evidence that, as part of its general operations, the petitioner had used the questioned lands for storage of dynamite and had begun preparations for its general use; and a denial of its use would presently hinder its operations and in time cause it to cease altogether. It would not only produce serious financial harm, but would, in the end, destroy the business.
Although not every expansion or extension of certain operations will be permitted, the view has been taken that it is not essential that a nonconforming use exercised at the time a zoning ordinance is enacted should embrace an entire tract in order to entitle an owner to subsequently employ it all for the use. To so hold would deprive owners of the use of their property as effectively as if an ordinance was so drawn as to be completely prohibitive of all use. (8 McQuillin, Municipal Corporations [3d ed.], § 25.208, p. 521; De Felice v. Zoning Bd. of Appeals of Town of East Haven, 130 Conn. 156; Village of Ossining v. Meredith, 190 Misc. 142.)
In commenting on, and approving this theory, the Court of Appeals in Town of Somers v. Camarco (308 N. Y. 537, 540-541) said, “ The courts, in order to afford stability to property owners who do have existing nonconforming uses, have imposed the test of reasonableness upon such exercise of the police powers. Therefore, broad general rules and tests, such as expressed in People v. Miller (304 N. Y. 105), must always be considered in this context. * * * A definition of reasonableness can not be made for all occasions, and must, of necessity, be considered anew in the light of each problem presented.”
It is quite obvious that an owner intending to carry on a quarrying operation acquires more land than he thinks he will need so that he will not be a source of nuisance to his neighbors. It must be assumed that for practical and economical reasons he must begin operations at one given point and continue from there to a point on his land where his natural resource ends or at his boundary line. For the same reasons, it is not feasible for him to quarry at different locations at the same time. To be also taken into consideration is the fact that the prior nonconforming use was not the ordinary ‘ ‘ run of the mill ’ ’ variety, but that here it involved a ‘ ‘ diminishing asset ”.
*14 Upon all of the evidence, this court concludes that the land in question is in the category of a nonconforming use. The sole question remaining is the effect of the Zoning Ordinance of 1948.
It has always been the law of this State that nonconforming uses which have been in existence when a zoning ordinance is enacted, are constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance. (People ex rel. Ortenberg v. Bales, 250 N. Y. 598; Matter of Caponi v. Walsh, 228 App. Div. 86; Matter of Pelham View Apts. v. Switzer, 130 Misc. 545.)
There is no provision in the zoning ordinance that nonconforming uses could be continued. In modern zoning ordinances, this is provided for and there then usually follows a series of reasonable and nonconfiscatory regulations and provisions touching upon the protection of the public from nuisances, etc. The zoning ordinance here before us is silent on this subject.
Zoning ordinances and regulations almost always impose substantial loss or hardship upon a landowner, particularly where prospective use or the continuation of existing and permitted uses, is prohibited. This is a loss that is much greater than that sustained by reason of a prospective use restriction.
The destruction of substantial businesses developed prior to the adoption of a zoning ordinance is not to be deemed to be balanced or justified by the advantages to the public, in terms of more complete and effective zoning.
This does not mean, however, that the municipal authorities cannot regulate the use of such land provided the regulations are not confiscatory and unreasonable.
Thus, in the present case, any use of the area in question is to be given no greater status than the area actually in use, and it is, therefore, subject to further regulation by the town so long as such regulatory provisions are reasonable and within the police power, to wit: the obtaining of an excavating permit, after a hearing before the Town Board at which proof should be taken.
It would, therefore, appear that an excavation permit should be granted (and the stop-work order cancelled) provided that all reasonable requirements of the Excavation Ordinance of 1950 are complied with. This matter is, therefore, remitted to the Town Board for the issuance of a permit, upon compliance by the petitioner, of all the conditions and prerequisites of the Excavation Ordinance of 1950.