DINGEMAN ADVERTISING, INC v ALGOMA TOWNSHIP

Decision of the Court

1. Zoning—Injunction—Township—Billboards—Vested Noncon-
   forming Use.

An order of a trial court which permanently enjoined defendant
township from interfering with plaintiff's vested nonconforming
billboard use is affirmed, per T. M. Kavanagh, C. J., and T. G.
Kavanagh, Levin, and M. S. Coleman, JJ.; the critical point in
vesting of a nonconforming use is when a zoning ordinance is
enacted, per Swainson, Williams, M. S. Coleman, and J. W.
Fitzgerald, JJ.

---

References for Points in Headnotes
[1] 3 Am Jur 2d, Advertising §§ 13–17.
   58 Am Jur, Zoning §§ 19, 146 et seq.
   Municipal power as to billboards and outdoor advertising. 58
   ALR2d 1314.
[2] 58 Am Jur, Zoning §§ 188 et seq., 234.
   Attack upon validity of zoning statute or ordinance as affected by
   provisions for variations, permits, etc. 136 ALR 1378.
   Injunction as remedy for violation of zoning ordinance. 129 ALR
   885.
[3, 4, 6, 12] 13 Am Jur 2d, Buildings § 10.
[3, 4, 6, 9, 12, 15–18, 21, 22] Rezoning or amendment of zoning
   regulations as affecting persons who have purchased or proved
   property in reliance upon original regulations. 138 ALR 500.
[4, 9, 15–18] 58 Am Jur, Zoning § 184 et seq.
[5, 6, 9, 12, 15, 17, 18, 22] 58 Am Jur, Zoning §§ 149, 150.
[7] 42 Am Jur 2d, Injunctions § 1.
[8, 11, 15, 19] 58 Am Jur, Zoning § 173 et seq.
[10] 42 Am Jur 2d, Injunctions §§ 36, 301, 318.
[13] 58 Am Jur, Zoning § 178 et seq.
[14] 58 Am Jur, Zoning § 146 et seq.
[20] 58 Am Jur, Zoning §§ 10, 176.
   Validity and construction of statutory notice requirement prerequi-
   site to adoption or amendment of zoning ordinance or regulation.
   96 ALR2d 449.
[21, 22] 58 Am Jur, Zoning § 182.

SEPARATE OPINION

T. M. KAVANAGH, C. J., and T. G. KAVANAGH and LEVIN, JJ.

2. INJUNCTION—SUPREME COURT—MUNICIPAL CORPORATIONS—BUILD-
ING PERMIT.

*A crucial fact considered by the Supreme Court in cases where an
injunction is sought to restrain a city from interfering with the
erection of a structure is whether or not the city has ever
issued a lawful permit to begin with, upon which the holder of
the permit has substantially relied to his detriment.*

3. MUNICIPAL CORPORATIONS—TOWNSHIPS—BUILDING PERMIT.

*Once a city or township issues a valid building permit to an
applicant, that applicant has every reason and right to rely
thereon in his business dealings.*

4. ZONING—NOTICE—BUILDING PERMIT—NONCONFORMING USE—EQ-
UITY.

*The issuance of a building permit itself will not give vested rights
to a nonconforming use to the holder thereof but the possession
thereof, and substantial reliance thereon, will give such rights;
and in determining whether or not there has actually been
substantial reliance on the issuance of the permit, in order that
a nonconforming use may vest, equity demands that, at the
very least, all actions which have been undertaken and com-
pleted by the holder of the permit prior to actual notification to
him of the revocation of such permit must be considered.*

5. ZONING—BUILDING PERMIT—NONCONFORMING USE—BILLBOARD—
TOWNSHIPS—EQUITY.

*A vested nonconforming use existed in favor of a holder of a
building permit where a large portion of the frame structure of
a billboard was completed prior to any action on the part of the
township, there was reliance upon the building permit by the
holder thereof, and the preparatory construction work com-
pleted by the holder of the building permit was of substantial
character; therefore, equity requires that the holder be permit-
ted to complete the project.*

OPINION TO REVERSE

M. S. COLEMAN, J.

6. ZONING—VESTED RIGHT—BUILDING PERMIT—POLE—TRANSFORMER.

*Circumstances afforded plaintiff-corporation a vested property
right in the planned use of land where it relied upon a building
permit, it incurred substantial costs, and sufficient work was*

*done upon the land by the placing of pole and transformer thereon.*

7. INJUNCTION—EQUITY.

*Injunction is an equitable remedy usually exercised where there has been a violation of a legal right.*

8. ZONING—ORDINANCES—NONCONFORMING USE.

The critical point in vesting of a nonconforming use is when a zoning ordinance is enacted.

9. ZONING—CONTRACTS—POLE—TRANSFORMER—SIGN—VESTED PROPERTY INTEREST.

*Purchasing land, executing a land contract, obtaining a building permit, negotiating and completing an advertising contract, staking the location, causing a pole and transformer to be placed on the land, and beginning construction of a sign at its shop, expending $2,645, were factors making plaintiff-corporation's case analogous to a prior decision of the Michigan Supreme Court which held that such facts concerning on and off premises activity were sufficient to establish a vested property interest.*

10. INJUNCTION—EQUITY—DISCRETION.

*Trial court did not abuse its discretion in granting a permanent injunction where the great weight of equities are on the side of plaintiff.*

SEPARATE OPINION

SWAINSON, WILLIAMS, and J. W. FITZGERALD, JJ.

11. ZONING—ORDINANCES—NONCONFORMING USE.

The critical point in vesting of a nonconforming use is when a zoning ordinance is enacted rather than when a construction stop order is served.

12. ZONING—VESTED RIGHT—NONCONFORMING USE—BUILDING PERMIT —ELECTRICAL POLE—BILLBOARD—ORDINANCES.

*Plaintiff had done insufficient work on the land to establish a vested right to a nonconforming use where it entered into a land contract, was issued a building permit, negotiated an advertising contract for the property, caused the sign location to be staked, had a 40-foot pole and transformer installed upon the property, signed an advertising contract for a billboard, and engaged in shop work in constructing an outline of the billboard before the township adopted its amendatory zoning ordinance.*

13. ZONING—NONCONFORMING USE—ORDINANCES.

*The general rule is that for a property owner to have the benefit of the nonconforming use provisions of a zoning ordinance, the use sought to be continued must be the use in existence on the effective date of the ordinance.*

14. ZONING—VESTED PROPERTY RIGHT—NONCONFORMING USE—ORDINANCES.

*The test for determining in Michigan whether there is a vested property right in an alleged nonconforming use prior to the adoption of an amendatory zoning ordinance is: (1) whether there has been preparatory construction work of a substantial character which has effected a tangible change in the land itself and (2) whether such work has made apparent the* actual use *of the premises asserted as nonconforming.*

15. ZONING—NONCONFORMING USE—VESTED PROPERTY RIGHT—ORDINANCES.

*The interests of a property holder will be held to outweigh the interests of a zoning body and nonconforming use prior to the adoption of an amendatory zoning ordinance will be established thereby creating a vested property right in the owner, if there has been preparatory construction work of a substantial character which has effected a tangible change in the land itself and such work has made apparent the* actual use *of the premises asserted as nonconforming.*

16. ZONING—NONCONFORMING USE—SURVEY—VESTED PROPERTY RIGHT—BILLBOARD—ORDINANCES.

*The making of a survey and staking of land based on that survey is not sufficient to vest property rights in a nonconforming use prior to the adoption of an amendatory zoning ordinance as the mere placement of stakes in the ground is obviously not work of a substantial character effecting a tangible change in the land itself and stakes do not make apparent the alleged nonconforming use of the land as the site for a billboard.*

17. PROPERTY—SURVEY—VESTED PROPERTY RIGHT—ORDINANCES.

*The making of a survey is insufficient preliminary work to vest property rights prior to the adoption of an amendatory zoning ordinance.*

18. ZONING—ELECTRICAL POLE—NONCONFORMING USE—BILLBOARD—ORDINANCES.

*Installation of an electrical pole did not establish a nonconforming billboard use prior to the adoption of an amendatory zoning ordinance because the electrical pole has only vested the land-*

*owner with an illumination use not a billboard use; the changes made in the land must, to lawfully vest a nonconforming use, make apparent the* actual *use asserted as nonconforming.*

19. ZONING—STEEL SUPPORTS—ADVERTISING PANEL—NONCONFORMING USE.

*Steel supports of an outdoor advertising panel embedded in concrete would be sufficient to constitute a vested nonconforming use had such amount and character of construction on the land existed at the time of enactment of a zoning ordinance, but the fact of the matter is that it did not, therefore, that attempt at establishment of nonconforming use is too late and is not entitled to create a vested nonconforming use.*

20. ZONING—STATUTES—NOTICE—CONSTITUTIONAL LAW—DUE PROCESS —TOWNSHIPS—HEARING—PUBLICATION.

*Michigan Supreme Court has no reason to find that the Legislature did not provide due process in the statutory notices of publication of meetings of a township zoning board, publication of, and public hearing on a proposed change by a township zoning board, and publication of, and public hearing on a proposed change by a township board (MCLA 125.275, 125.279, 125.281, 125.284).*

21. ZONING—BUILDING PERMIT—BILLBOARD—ORDINANCES.

*Plaintiff does not qualify for the provision for outstanding permits which states "[w]here plans for a building have been filed which would conform with the zoning regulations then effective but not with subsequently enacted regulations, and where a building permit for such building has been issued, such building may be erected provided construction is begun within three months of the issuance of the Building Permit and diligently pursued to completion" because it did not begin construction of the frame for its billboard until 11 and 1/2 months after issuance of its building permit, substantially more than 3 months after issuance of its permit and, significantly, more than 3 weeks subsequent to adoption of a new ordinance which did not permit billboards (Algoma Township Zoning Ordinance of 1971, § 13.8).*

22. ZONING—NONCONFORMING USE—BILLBOARD—BUILDING PERMIT— ELECTRICAL POLE—ORDINANCES.

*Landowner did not establish a vested nonconforming billboard use under Michigan law prior to adoption by a township of its amendatory zoning ordinance where the landowner entered*

*into a land contract, was issued a building permit, negotiated an advertising contract for the property, caused the sign location to be staked, had a 40-foot pole and transformer installed upon the property, signed an advertising contract for the billboard, and engaged in shop work in constructing an outline of the billboard before the township adopted its amendatory zoning ordinance.*

Appeal from Court of Appeals, Division 3, Danhof, P. J., and R. B. Burns and J. H. Gillis, JJ., reversing and remanding Kent, John T. Letts, J. Submitted May 9, 1974. (No. 13 May Term 1974, Docket No. 54,834.) Decided November 21, 1974.

46 Mich App 71 reversed.

Complaint by Dingeman Advertising, Inc., against Algoma Township and others for an injunction to restrain defendants from interfering with plaintiff's erection of a billboard. Injunction granted. Defendants appealed to the Court of Appeals. Reversed and remanded with instructions. Plaintiff appeals. Reversed.

*Warner, Norcross & Judd* (by *J. M. Neath, Jr.,* and *Robert H. Skilton),* for plaintiff.

*Annis, Annis & Oldstrom,* for defendants.

T. M. Kavanagh, C. J. *(separate opinion).* This case is before us on leave granted from the decision of the Court of Appeals, 46 Mich App 71; 207 NW2d 488 (1973) reversing an order of the trial court which permanently enjoined the defendant township from interfering with appellant's vested billboard use. As we find that such a vested right by way of an existing nonconforming use did exist, we reverse the decision of the Court of Appeals.

This case comes before us upon stipulated facts which are crucial to its determination. The follow-

ing calendar of events adequately sets forth the factual situation:

| | |
|---|---|
| April, 1970 | Appellant discussed with the Algoma Township Supervisor the availability of billboard sites. Appellant determined that billboards were permitted at the location in question at that time. |
| March 26, 1970 & April 16, 1970 | Publication by Algoma Township Planning Commission of new zoning ordinance and notice of public hearing on its adoption. |
| May 1970 | Appellant entered into a land contract. (Total cost $900; attorneys fees: $60; incidental expenses: $400.) |
| May 15, 1970 | Building permit issued to appellant to expire May 15, 1971. |
| May 1970– March 1971 | Appellant negotiates advertising contract for the property. (Expenses: $1,-500.) |
| July 1970 | Appellant caused sign location to be staked. |
| Nov. 23, 1970– Jan. 19, 1971 | Consumers Power installed a 40-foot pole and transformer upon the property. |
| April 1, 1971 | Appellant signed an advertising contract for the billboard in question. |
| April 1, 1971– April 28, 1971 | Appellant's agents engaged in shop work in Traverse City constructing an outline of the billboard. (Total cost: $2,645.50.) |
| April 6, 1971 | The new zoning ordinance officially adopted by Algoma Township effective immediately not permitting billboards. |

April 15, 1971    Publication of the new ordinance by Algoma Township Board.

April 28, 1971    Appellant's construction crew began erecting billboard structure. The frame of said structure was completed when the building inspector caused construction to cease with a stop order.

The parties also stipulate that "[s]ince the steel supports of the outdoor advertising panel are embedded in concrete, the only feasible way the sign can be removed is to cut through the steel supports with a torch". See Exhibit F attached to this opinion.

As noted by the parties in the Court of Appeals, the leading Michigan case on nonconforming uses is *City of Lansing v Dawley,* 247 Mich 394; 225 NW 500 (1929). In *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276; 118 NW2d 258 (1962), the Court at page 279 stated:

"The *City of Lansing Case* holds that, even after issuance of permit, construction in pursuance of such permit is enjoinable when, prior to construction or fairly indicative commencement of construction, an ordinance is enacted which validity bars what was lawfully authorized by the permit."

As to the type of construction which must be undertaken to acquire a vested nonconforming use, the Court in *Bloomfield Twp v Beardslee,* 349 Mich 296; 84 NW2d 537 (1957) stated, p 307:

"To establish a nonconforming use there must be work of a 'substantial character' done by way of preparation for an actual use of the premises. Mere 'preliminary' operations, *e.g.,* ordering of plans, surveying the land, removal of old buildings, are not sufficient. * * * Nor do occasional operations upon the land suffice to indicate its appropriation to a particular use."

Both parties to this case, and the Court of Appeals, have analyzed the factual situation present herein in such a manner as to determine whether or not the work which the appellant had performed in connection with this property met the tests set forth in *Lansing* and *Beardslee, supra,* as of the effective date of the new zoning ordinance, April 6, 1971. All parties to this lawsuit, and both lower courts, have apparently taken the unstated position that the actions of the appellant in erecting the frame of the billboard structure cannot be taken into consideration in this suit because the actions were undertaken 22 days after the effective date of the new zoning ordinance. We do not agree.

Crucial to the *Lansing* holding was the statement of the Court, *supra,* pp 396–397:

> "It thus appears that the first work done upon the new building was three months after the ordinance went into effect and *after the defendant had been notified that his permit had been revoked.* If he had constructed the building or partially constructed it, if the work he did after the enactment of the ordinance had been done before, there would be no question as to his vested property rights." (Emphasis supplied.)

Thus, as noted above, crucial to the *Lansing* decision was the fact that construction had taken place after the building permit issued by the city had been revoked and notice given plaintiff. *Franchise Realty, supra,* involved a mandamus action to order the city to issue the permit. This Court held that no nonconforming use was established in that case. However, in *De Mull v City of Lowell,* 368 Mich 242; 118 NW2d 232 (1962) wherein the parties had obtained a prior permit under which they had expended considerable sums in reliance thereon, a nonconforming use was found to exist.

In *Willingham v City of Dearborn,* 359 Mich 7; 101 NW2d 294 (1960), Justice Carr properly pointed out in his dissent that a crucial fact considered by the Court in cases of this nature is whether or not the city has ever issued a lawful permit to begin with, upon which the holder of the permit has substantially relied to his detriment.

On page 16 in *Willingham, supra,* Justice Carr aptly points out the facts crucial to his view of that case. He states:

"No permit had been granted to plaintiff for the construction of his service garage. The application therefor gave him no vested rights in the property with reference to the construction of said building, nor was the situation otherwise at the time the petition for writ of mandamus was filed."

Although this Court disagreed with Justice Carr as to his view of the procedural issue involved in *Willingham, supra,* this Court fully supports his analysis of the *Dawley* line of cases. Once a city or township issues a valid permit to an applicant, that applicant has every reason and right to rely thereon in his business dealings. Permits are not issued by local authorities when the contemplated use for which the permit is issued conflicts with a local zoning ordinance. Should these ordinances change, the average holder of such a permit, even if he had notice of the change of ordinance, would not necessarily presume that the new ordinance applied to him. After all, he has within his possession an official document of the local community authorizing him to proceed with his contemplated project.

While it is true that the issuance of a permit itself will not give vested rights to a nonconforming use to the holder thereof, the possession

Exhibit F.

thereof, and substantial reliance thereon, will give such rights. And in determining whether or not there has actually been substantial reliance on the issuance of the permit, in order that a nonconforming use may vest, equity demands that, at the very least, all actions which have been undertaken and completed by the holder of the permit prior to actual notification to him of the revocation of such permit must be considered.

Under the facts of the instant case, this would require that this Court also consider that a large portion of the frame structure of the billboard was also completed prior to any action on the part of the township. Under the authority of any of the prior cases cited above, the extent of the reliance upon the permit by the appellant in this case, plus the substantial character of the preparatory construction work completed by appellant in this case, lead this Court to a conclusion that a valid vested nonconforming use exists in favor of the appellant. Therefore, equity requires that appellant be permitted to complete the project. We find other objections raised by the township in this case to be without merit.

Accordingly, the Court of Appeals is reversed and the judgment of the trial court is reinstated.

T. G. KAVANAGH and LEVIN, JJ., concurred with T. M. KAVANAGH, C. J.

M. S. COLEMAN, J. *(to reverse).* The facts have been stipulated by the parties and adequately detailed in the other opinions. In his decision based on these facts, the trial judge found that "the plaintiff relied upon the permit, that it incurred substantial costs and that sufficient work was done upon the land by the placing of pole and transformer thereon". The judge concluded that

these circumstances afforded plaintiff a vested
property right in the planned use. I would affirm
that finding and conclusion.

Injunction is an equitable remedy usually exer-
cised when there has been a violation of a legal
right. In this case, plaintiff claims to have a vested
property right in the planned land use and argues
that defendants' stop order was in violation of that
right.

I agree with Justice Williams that "the critical
point in vesting of a nonconforming use is when a
zoning ordinance is enacted." I do not agree with
his conclusion that "there was inadequate con-
struction or use under Michigan law to constitute
a vested nonconforming use." Under all the cir-
cumstances on and off the particular parcel of
land, I must conclude that adequate construction
or use had occurred to constitute a vested, noncon-
forming use.

The decision in *City of Lansing v Dawley,* 247
Mich 394; 225 NW 500 (1929) contains the basic
principles. The Court noted that if the landowner

"had constructed the building or partially constructed
it, if the work he did after the enactment of the
ordinance had been done before, there would be no
question as to his vested property rights. But he did
nothing of a substantial character. He went no farther
than to order the plans and cause a survey to be made
of the lot. This preliminary work was not sufficient to
create a vested right to erect the building."

The Court apparently had this language in mind
when it adopted the following analysis in *Sanden-
burgh v Michigamee Oil Co,* 249 Mich 372; 228
NW 707 (1930):

"The permit was issued in true accord with the
zoning ordinance then in force, and, if substantial work

was commenced and performed thereunder, the city was precluded from revoking the permit and later amending the ordinance with reference solely to this property and have it accorded retroactive effect. We think the work commenced toward the construction of the building, the purchase of material and accessories, and the sums expended for labor bring the case within the exception noted in *City of Lansing v Dawley,* 247 Mich 394."

Also see *Coldwater v Williams Oil Co,* 288 Mich 140; 284 NW 675 (1939) and *Expert Steel Co v City of Clawson,* 368 Mich 619; 118 NW2d 815 (1962).[1] Justice BLACK further said in *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276; 118 NW2d 258 (1962):

"The *City of Lansing Case* holds that, even after issuance of permit, construction in pursuance of such permit is enjoinable when, prior to construction or fairly indicative commencement of construction, an ordinance is enacted which validity bars what was lawfully authorized by the permit."

In his dissent to the Court of Appeals decision in this case at 46 Mich App 71; 207 NW2d 488 (1973), Judge J. H. GILLIS opined that "tangible change of a substantial nature is a relative question." He then noted the following:

"The only tangible changes in the property were the staking of the sign and the erection of the power pole. However, plaintiff had performed substantial work in utilizing the property in accordance with the existing zoning ordinance and permit issued to him for erection of a billboard. He had purchased the land, executed a

---

[1] The analysis in these and other cases led two Justices to conclude that "there is a body of case precedent in which nonconforming uses are found to exist based upon the investment of money and the change of a proprietor's position in reliance upon existing regulation or nonregulation." *See* Justice T. E. BRENNAN's opinion in *Detroit Edison Co v City of Wixom,* 382 Mich 673; 172 NW2d 382 (1969).

land contract, obtained a building permit, negotiated
and completed an advertising contract, staked the loca-
tion, caused a pole and transformer to be placed on
land, and began construction of the sign at his shop in
Traverse City, expending $2,645."

I agree with Judge J. H. Gillis that these factors
make this case analogous to *De Mull v City of
Lowell,* 368 Mich 242; 118 NW2d 232 (1962). In
that case the land user wanted to establish a junk
yard. He began to build a seven foot fence around
the property before the land was rezoned residen-
tial. This was the only change to the property. In
addition, as Judge J. H. Gillis indicated, the user
"entered into a purchase agreement, executed a
land contract for purchase, purchased some auto-
mobiles, ordered fence posts, and obtained a deal-
er's license." The trial judge in *De Mull* concluded
and this Court agreed that these facts concerning
on and off premises activity were sufficient to
establish a vested property interest.

To deny the requested injunction would be to
leave plaintiff in the position of having purchased
land useless for its planned purpose. Plaintiff
would have expended $2,645 for a sign which could
not be used on the property for which it was
designed. It would be left with an advertising
contract which it could not execute. The trans-
former and pole would be useless and probably
would have to be removed. The time and effort
spent in obtaining the permit, staking out the
ground and in furthering the business transactions
would be lost.

The great weight of the equities are on the side
of the plaintiff. The trial court did not abuse its
discretion in granting the permanent injunction.

I would reverse the Court of Appeals and affirm
the trial court.

WILLIAMS, J. *(separate opinion)*. There are two principal questions presented in this zoning case:[1]

1 —Is the critical point of time relative to the vesting of a nonconforming use (a) when a zoning ordinance is enacted, or (b) when a construction stop order is served?

2 —What must be done to establish a nonconforming use?

We hold that the critical point in vesting of a nonconforming use is when a zoning ordinance is enacted. We further hold that in the instant case appellant had done insufficient work on the land to establish a vested right to a nonconforming use. Accordingly, we affirm the Court of Appeals in its reversal of the trial court on this point.

## I. FACTS.

The facts in this case are of paramount importance and are stipulated in detail by the parties. The following calendar of events tells the story:

April 1970         Appellant discussed with the Algoma Township Supervisor the availability of billboard sites. Appellant determined that billboards were permitted at the location in question at that time.

March 26, 1970 &
April 16, 1970     Publication by Algoma Township Planning Commission of new zoning ordinance and notice of public hearing on its adoption.

---

[1] There is a secondary issue in this case briefly argued by the parties and only discussed implicitly in a conclusory sentence by the Court of Appeals (46 Mich App 71, 73). Appellees argue that appellant could not have acquired property rights due to its failure to abide by the set-back provision of Algoma Township Zoning Ordinance of 1955, § VI (1). We do not reach this issue today as, in light of our affirmance of the Court of Appeals, it is unnecessary to disposition of this cause.

| | |
|---|---|
| May 1970 | Appellant entered into a land contract. (Total cost $900; attorneys fees: $60; incidental expenses: $400.) |
| May 15, 1970 | Building permit issued to appellant to expire May 15, 1971. |
| May 1970–March 1971 | Appellant negotiates advertising contract for the property. (Expenses: $1,-500.) |
| July 1970 | Appellant caused sign location to be staked. |
| November 23, 1970–January 19, 1971 | Consumers Power installed a 40-foot pole and transformer upon the property. |
| April 1, 1971 | Appellants signed an advertising contract for the billboard in question. |
| April 1, 1971–April 28, 1971 | Appellant's agents engaged in shop work in Traverse City constructing an outline of the billboard. (Total Cost: $2,645.50.) |
| April 6, 1971 | The new zoning ordinance officially adopted by Algoma Township effective immediately not permitting billboards. |
| April 15, 1971 | Publication of the new ordinance by Algoma Township Board. |
| April 28, 1971 | Appellant's construction crew began erecting billboard structure. Building inspector caused construction to cease with a stop order. |

The parties then proceeded to circuit court. The trial court, in an opinion of May 15, 1972, held, *inter alia,* that appellant's use was of substantial character and ordered defendant permanently enjoined from interfering with appellant's vested billboard use. The Court of Appeals reversed (2–1) on March 29, 1973 finding no "tangible change in

the land itself by excavation and construction." 46
Mich App 71; 207 NW2d 488 (1973). We granted
leave on October 26, 1973. 390 Mich 794–795
(1973).

## II. WHEN MUST A NONCONFORMING USE VEST?

The dispositive legal issue in this case is
whether a nonconforming use vests

    a) when a zoning ordinance is enacted, or

    b) when a construction stop order is served?

The general rule covering this point is well-
stated in 2 Yokley, Zoning Law & Practice (3d ed),
§ 16-5, p 225 as follows:

> "The general rule is that for a property owner to
> have the benefit of the nonconforming use provisions of
> a zoning ordinance, *the use sought to be continued
> must be the use in existence on the effective date of the
> ordinance.* "(Emphasis added. Footnote omitted.)[2]

Michigan case law recognizes and follows this
rule.[3] An important case in point is *De Mull v City
of Lowell,* 368 Mich 242; 118 NW2d 232 (1962).
Justice BLACK, in *De Mull,* quoted trial Judge
Hoffius's opinion with approval and wrote as fol-
lows for a unanimous Court:

> "The judge's opinion speaks for itself and fully war-
> rants affirmance of that part of the entered decree
> which adjudges that plaintiff's said business constitutes

---

[2] *See in accord:* 1 Anderson, American Law of Zoning, § 6.10, pp
328–330; Strong, "Nonconforming Uses: The Black Sheep of Zoning",
7 Institute on Planning & Zoning (Matthew Bender, 1968), p 25.

[3] In cases where no permit issue was involved, the case law is
unequivocal in recognizing this rule. Representative of the many
supportive cases in Michigan are: *Double I Development Co v Taylor
Twp,* 372 Mich 264, 267; 125 NW2d 862 (1964); *White Lake Twp v
Amos,* 371 Mich 693, 699; 124 NW2d 803 (1963); *Detroit Edison Co v
City of Wixom,* 382 Mich 673, 690; 172 NW2d 382 (1969).

a legally protectible nonconforming use." 368 Mich 242, 250.

The pertinent part of the quotation from Judge Hoffius's opinion follows:

" 'It was said in *City of Lansing v Dawley,* 247 Mich 394 [225 NW 500 (1929)] at page 396, as follows:
" ' "In the exercise of its police power the city of Lansing had a right to enact the ordinance in question, but this right was subject to vested property interests acquired before its enactment. The defendant contends that he has such interests and that he acquired them in reliance on a valid permit. *We would be inclined to agree with him if before the enactment of the ordinance he had done anything of a substantial character towards the construction of the building."* (Emphasis added.)
" 'It is apparent from this case that if the owner had undertaken substantial construction of the building for which a permit was issued prior to the adoption of the zoning ordinance the court would have permitted the use of the premises.

*       *       *

" 'From the foregoing it is apparent that at the time the zoning ordinance was adopted for the city of Lowell the plaintiff was operating a junk yard as a nonconforming use.' " 368 Mich 242, 248–249.

It will be noted that this Court specifically approved Judge Hoffius's opinion which emphasized the quotation from *City of Lansing v Dawley* making the time of enactment of the zoning ordinance the critical time determinative of whether there was or was not an existing nonconforming use of the property. It is of further interest that in the *De Mull* case the nonconforming use was recognized as vesting and in the *City of Lansing* case it was held not to have vested.

That *De Mull* is a correct interpretation of *City*

*of Lansing v Dawley*[4] is reinforced by the following unanimous statement of this Court in *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276, 279; 118 NW2d 258 (1962), decided the same day:

"The *City of Lansing Case* holds that, even after issuance of permit, construction in pursuance of such permit is enjoinable when, prior to construction or fairly indicative commencement of construction, an ordinance is enacted which validity bars what was lawfully authorized by the permit."

---

[4] My Brother the Chief Justice states in his opinion in this case:

"Crucial to the *Lansing* holding was the statement of the Court, *supra,* pp 396–397:

" 'It thus appears that the first work done upon the new building was three months after the ordinance went into effect and *after the defendant had been notified that his permit had been revoked.* If he had constructed the building or partially constructed it, if the work he did after the enactment of the ordinance had been done before, there would be no question as to his vested property rights.' (Emphasis supplied.)"

With all due respect, the Chief Justice's emphasis on the revocation of the permit as the critical point in *City of Lansing* seems strained. The very sentence in which this quoted reference above appears refers first to the time "the ordinance went into effect". But more importantly, that the time of enactment of the ordinance is the critical point is brought out by the fact that the preceding paragraph in *City of Lansing* twice refers to the time of enactment of the ordinance as critical. Furthermore, the last sentence quoted by the Chief Justice above refers to the time of enactment of the ordinance as does the quotation from the New York case, *Rice v Van Vranken, infra,* heavily relied upon by this Court in *City of Lansing.* Reference to the revocation of the permit is never again mentioned in *City of Lansing* except indirectly where it was held that the city was not guilty of laches in starting action against the defendant more than three months after the enactment of the ordinance and one month after excavation was finished and the footings were in. In the instant case, the township issued its stop order 22 days after the effective date of the zoning ordinance, the same day appellant began construction.

Again with all due respect to my Brother the Chief Justice's reference to *Willingham v City of Dearborn,* 359 Mich 7; 101 NW2d 294 (1960), Justice CARR's reference in his dissent to *City of Lansing v Dawley* is on all fours with the general rule we re-affirm today in that Justice CARR recognized the critical time is the time of enactment of an ordinance. Justice CARR only points out that the newly prohibitory ordinance might lawfully have been used in the city's amended answer as a valid defense for its refusal to issue a permit. In any event, the main point of both opinions in *Willingham* appears to be not the merits of the case but pleading procedure.

In the instant case the general rule is reinforced by specific legislation. The rule to be followed is plainly expressed in the language of the relevant section of The Township Rural Zoning Act, MCLA 125.286; MSA 5.2963(16), which reads as follows:

"Sec. 16. The lawful use of any dwelling, building or structure and of any land or premise as *existing and lawful at the time of enactment of a zoning ordinance, or, in the case of an amendment of an ordinance, then at the time of such amendment,* may be continued although such use does not conform with the provisions of such ordinance or amendment." (Emphasis added.)

## III. WHAT MUST BE DONE TO ESTABLISH A NONCONFORMING USE?

The subject of what precisely constitutes a nonconforming use has, understandably, generated a great deal of controversy and discussion.[5] The stakes are high—the property owner generally has a strong pecuniary interest in retaining the existing use of his or her land, while the zoning authority is seeking to upgrade the community by pre-

---

[5] In addition, there has been a substantial amount of discussion in the last few years about billboards specifically, their status as nonconforming uses, and other methods (mostly statutory amortization provisions or action under the condemnation or nuisance laws) aimed at ridding certain geographic zones of billboards' aesthetic and environmental detractions. *See* Babcock, "What Should and Can Be Done With Nonconforming Uses", Institute on Planning, Zoning, and Eminent Domain (Southwest Legal Foundation 1972) p 23; Dowds, "Private Signs and Public Interests", Institute on Planning, Zoning, and Eminent Domain (Southwest Legal Foundation 1974) p 221; Holme, "Billboards and On-Premise Signs: Regulation and Elimination Under the Fifth Amendment", Institute on Planning, Zoning, and Eminent Domain (Southwest Legal Foundation 1974), p 247; *Zoning: Amortization of Non-Conforming Uses For Aesthetic Purposes,* 39 U Mo at KC L Rev 179 (Winter 1970–1971); *Nonconforming Uses in Iowa: The Amortization Answer,* 55 Iowa L Rev 998 (1970); *Billboard Law Today-Reaction or Solution,* 24 Baylor L Rev 86 (1972); Sussna, *Abatement of Nonconforming Uses and Structures,* 44 Conn BJ 589 (1970).

venting deviation from a plan thought to be in the
best interests of all the people residing in the
zoned area.

The leading case in Michigan on nonconforming
use is *City of Lansing v Dawley,* 247 Mich 394; 225
NW 500 (1929) where the Court found that appel-
lant did not have a vested nonconforming use in a
business building. In reaching this conclusion, a
unanimous Court held that a nonconforming use
could only be established:

"[I]f before the enactment of the ordinance he [the
property owner] *had done anything of a substantial
character towards the construction* of the building.

\* \* \*

" 'Evidently the test in each case as to whether a
holder of a permit has acquired vested rights thereun-
der is, not whether he has spent much or little in
reliance upon it, but rather *whether there has been any
tangible change in the land itself by excavation and
construction.'* [Quoting from *Rice v Van Vranken,* 132
Misc 82; 229 NY Supp 32 (1928).]

\* \* \*

"Until the excavation was finished and the footings
put in, which was late in October, the plaintiffs could
not be sure that the building was to contain stores."
(Emphasis added.) 247 Mich 394, 396–398.

The Court in *Bloomfield Twp v Beardslee,* 349
Mich 296; 84 NW2d 537 (1957) utilized a nearly-
identical test in the process of ultimately finding a
gravel mining operation not to be a vested noncon-
forming use:

"To establish a nonconforming use there must be
work of a *'substantial character'* done by way of prepa-
ration for an *actual use* of the premises. Mere 'prelimi-
nary' operations, *e.g.,* ordering of plans, surveying the
land, removal of old buildings, are not sufficient.\* \* \*
Nor do occasional operations upon the land suffice to

indicate its appropriation to a particular use." (Footnote omitted.) (Emphasis added.) 349 Mich 296, 307.

Subsequent Michigan cases do not dispute either the *Dawley* or *Beardslee* formulations of the general rules involved; they rely entirely on the application of those rules to particular factual situations. See *De Mull v City of Lowell,* 368 Mich 242; 118 NW2d 232 (1962) (junk yard was nonconforming use); *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276; 118 NW2d 258 (1962) (drive-in restaurant not nonconforming use); *Detroit Edison Co v City of Wixom,* 382 Mich 673; 172 NW2d 382 (1969) (transmission line was nonconforming use); *Fruitport Twp v Baxter,* 6 Mich App 283; 148 NW2d 888 (1967) (junk yard was not nonconforming use); *Fredal v Forster,* 9 Mich App 215; 156 NW2d 606 (1967) (operation of gravel pit and quarrying was nonconforming use); *Rodd v Palmyra Twp,* 42 Mich App 434; 202 NW2d 446 (1972) (trailer park was not nonconforming use).

To capsulize the law stemming from *Dawley* and *Beardslee,* the test for determining in Michigan whether there is a vested property right in an alleged nonconforming use is:

(1) Has there been preparatory construction work of a substantial character which has effected a tangible change in the land itself? *and*

(2) Has such work made apparent the *actual use* of the premises asserted as nonconforming?

If both of these indicia are met, the interests of the property holder will be held to outweigh the interests of the zoning body and nonconforming use will be established thereby creating a vested property right in the owner.[6]

---

[6] The law in other jurisdictions is in accord. *See* 8A McQuillan, Municipal Corporations (3d ed), §§ 25.186, 25.188, pp 25–26, 31; 1 Anderson, American Law of Zoning, § 6.17, p 344; 2 Yokley, Zoning

## IV. APPLICATION OF LAW TO INSTANT CASE.

A. *Construction and Use at Time of Ordinance Enactment.*

Prior to adoption of the amendatory zoning ordinance by Algoma Township, appellant alleges accomplishment of two preliminary steps *on the land:*

(1) Staking of the sign location; and

(2) Making of an electrical engineering survey and construction by Consumers Power of a 40-foot pole, installation of a transformer, and attachment of power lines.

We agree with the Court of Appeals that the making of a survey and staking of the land based on that survey is not sufficient to vest property rights. The mere placement of stakes in the ground is obviously not "work of a substantial character effecting a tangible change in the land itself." Nor do stakes make apparent the alleged nonconforming use of the land as the site for a billboard. In *Dawley* we specifically found that the making of a survey was insufficient preliminary work to vest property rights. 247 Mich 394, 397. We continue to take that position today.

We also agree with the reasoning of Judge DAN-HOF writing for a majority of the Court of Appeals with respect to the status of the electrical pole:

"The installation of the power pole presents a closer question. Plaintiff argues that here we have a tangible change in the land which satisfies the *Dawley* test; that 'tangible change' is a relative concept which varies in degree according to the character of the use which it is intended to effect; that to erect a billboard, relatively

Law & Practice (3d ed), § 16-2, pp 212–213; 2 Rathkopf, Law of Zoning & Planning, Chapt 58, § 3, p 58-14; 101 CJS, Zoning, § 184, pp 940, 941.

little change need be made in the land. *However, it is to be remembered that plaintiff claims and defendant contests that plaintiff has acquired a vested right to use its land for outdoor advertising purposes, not to illuminate it.* In *Dawley,* the defendant tore down one structure on his land and had another moved in preparing for construction. No vested rights were found to exist." (Emphasis added.) 46 Mich App 71, 75–76.

Judge DANHOF has well grasped the flaw in logic in appellant's contention that the electrical pole establishes a nonconforming billboard use. The electrical pole has only vested appellant with an illumination use not a billboard use. While it may be the case, as appellant urges, that little change in the land is necessary in order to erect a billboard, nonetheless, the changes made must, to lawfully vest a nonconforming use, make apparent the *actual* use asserted as nonconforming. The billboard use not being apparent from construction by Consumers Power of an electrical pole, appellant had no vested right in a nonconforming use of the land as the site for an advertising billboard.

At the time of enactment of the ordinance, there was inadequate construction or use under Michigan law to constitute a vested nonconforming use.

B. *If Construction and Use At Time of Service of Stop Work Order Were Controlling.*

Our Brother, the Chief Justice, directing his attention to the time of service of the stop work order, finds the additional factor to be considered of " 'steel supports of the outdoor advertising panel * * * embedded in concrete' ". We agree that such amount and character of construction on the land would be sufficient to constitute a vested nonconforming use had it existed at the time of enactment of the zoning ordinance, but the fact of the matter is that it didn't. Therefore, that at-

tempt at establishment of nonconforming use is too late and is not entitled to create a vested nonconforming one.

## C. *Was There Due Process Notice?*

To begin with, plaintiff-appellant makes no claim of lack of due process because of inadequate notice. This is what it says:

"Certainly plaintiff did not attempt to challenge the ordinance on the ground that it had no actual knowledge of the amendment. * * * [C]onstructive knowledge of changes does not affect the question whether a nonconforming use comes into existence. The issue is one of plaintiff's activity, in utilizing its property."

As stipulated by the parties, "[t]he Algoma Township Zoning Ordinance adopted April 6, 1971 was properly adopted and is a valid ordinance". In order to gain that status, Algoma Township took, as required by the Township Rural Zoning Act, MCLA 125.271 *et seq.;* MSA 5.2963(1) *et seq.,* a panoply of actions aimed at meeting due process notice requirements, including:

(1) Notice of publication of meetings of the township zoning board (MCLA 125.275; MSA 5.2963[5]);

(2) Notice by publication of, and public hearing on the proposed change by the township zoning board (MCLA 125.284; MSA 5.2963[14]; MCLA 125.279; MSA 5.2963[9]);

(3) Notice by publication of, and public hearing on the proposed change by the township board (MCLA 125.284; MSA 5.2963[14]; MCLA 125.281; MSA 5.2963[11]).

The brief of Algoma Township well depicts the time, trouble, and effort made by Algoma Township to comply with the statutory scheme for effective adoption of its new zoning ordinance:

"The township of Algoma spent several years considering the adoption of a new zoning ordinance before the adoption of the revised ordinance in 1971. The township hired a firm of planners who spent a considerable amount of time developing a master plan and a proposed zoning ordinance to replace the previous ordinance which was adopted in 1955. After many meetings of the planning commission, several public hearings by the planning commission and the township board, the new zoning ordinance was adopted April 6, 1971. The ordinance constituted a complete revision of the prior ordinance. It was not a special zoning ordinance amendment which was designed to thwart plaintiff's use of its property."

We have no reason to find that the Legislature did not provide due process in the notices above provided.

D. *"Fair Play" for Nonconforming Uses.*

Algoma Township without statutory compulsion did make specific provision for outstanding permits in its new ordinance:

"Article XIII
"Non-Conforming Uses

\* \* \*

"13.8 PLANS ALREADY FILED. Where plans for a building have been filed which would conform with the zoning regulations then effective but not with subsequently enacted regulations, and where a building permit for such building has been issued, such building may be erected *provided construction is begun within three months of the issuance of the Building Permit and diligently pursued to completion."* Algoma Township Zoning Ordinance of 1971, § 13.8. (Emphasis added.)

Appellant in the instant case did not begin construction of the frame for its billboard until 11 and 1/2 months after issuance of its building

permit, substantially more than 3 months after issuance of its permit and, significantly, more than 3 weeks subsequent to adoption of the new ordinance.[7] It does not qualify therefore for the provision for outstanding permits spelled out by Algoma Township in § 13.8.

## V. CONCLUSION.

In view of all of the facts, it is difficult to contend that Algoma Township was not fair as well as within its rights in enforcing its zoning ordinance with respect to plaintiff-appellant.

We hold that, on the particular facts of this case, appellant did not establish a vested nonconforming billboard use under Michigan law prior to adoption by Algoma Township of its amendatory zoning ordinance of April 6, 1971.

The Court of Appeals is affirmed. The trial court is reversed. This cause is remanded to Kent County Circuit Court for further action not inconsistent with this opinion.

Costs to appellees.

SWAINSON and J. W. FITZGERALD, JJ., concurred with WILLIAMS, J.

---

[7] Appellant, in its complaint, asserted compliance with Algoma Township Zoning Ordinance of 1971, § 13.8, through (1) survey and staking, and (2) hiring of Consumers Power to "provide electric installation". Consumers Power "installation" did not begin until more than *six months* subsequent to issuance of the building permit. Without question, and without extended discussion, survey and staking are not "construction" within § 13.8. For discussion of the legal effects of such acts, see § IV (A) of this opinion, *supra.*