## SCHUBINER v WEST BLOOMFIELD TOWNSHIP

Docket No. 70470. Submitted January 10, 1984, at Lansing.—Decided April 2, 1984.

Jared M. and Sondra Schubiner, owners of a parcel of property in West Bloomfield Township, acquired conditional approval from the township planning commission for a site plan proposing the construction of a three-story office building on their property. The Schubiners then authorized architects to prepare working drawings for the construction of the office building, met with the Oakland County Road Commission to discuss service drives to accommodate the ingress and egress to and from the property and prospective modifications of the thoroughfare which abutted the property, removed old buildings on the property and rough-graded it. The Schubiners were unable to arrange financing for the project within the one-year period of limitation applicable to the site plan approval. Mr. Schubiner requested a one-year extension of the site plan but the planning commission, rather than granting the extension, amended the zoning ordinance, limiting the height of office buildings on the Schubiner's property to one story. The Schubiner's renewal petition for an extension of the site plan was thereafter denied, as was their subsequent petition for a variance of the site from the ordinance. The Schubiners filed a complaint against West Bloomfield Township in Oakland Circuit Court alleging, *inter alia*, that they had acquired vested rights in the site plan. The court, Richard D. Kuhn, J., granted defendant's motion for partial summary judgment as to that count, finding that plaintiffs had failed to state a claim upon which relief could be granted as a matter of law. Plaintiffs appeal. *Held:*

The making of preparatory plans, landscaping, and the removal of existing structures is not sufficient to acquire vested rights in a site plan. Unless a building permit has been applied for and construction of the property commenced, vested rights

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Zoning and Planning §§ 10, 244.
[2] 82 Am Jur 2d, Zoning and Planning §§ 239, 240.

are not acquired even though substantial sums have been expended by the applicant.

Affirmed.

1. ZONING — TOWNSHIPS — SITE PLANS — VESTED RIGHTS.

Property owners who were granted site plan approval by a township's planning commission and proceeded to prepare for construction by authorizing architects to prepare working drawings for the construction of an office building, meeting with the county road commission to discuss necessary service drives to the property and prospective modifications to the thoroughfare which the property abutted, and preparing the site for construction did not acquire vested rights in the site plan approval beyond the plan's one-year period of limitation so as to bar the township's application of its amendatory zoning laws prohibiting the use of the premises as described in the site plan where the owners did not take out a building permit or commence actual construction during the one-year period of limitation.

2. ZONING — SITE PLANS — VESTED RIGHTS.

Vested rights in an approved site plan are acquired by a property owner where a building permit or a permit to operate is acquired and actual construction or operation is commenced during the site plan's period of limitation; where an application for a permit is pending and rezoning takes place before the permit is issued, no vested rights accrue.

*Leopold, Geller, Denja & Fayne* (by *Harvey D. Geller* and *Robert P. Geller),* for plaintiffs.

*Brennan, Bibeau & Poehlman, P.C.* (by *Paul H. Bibeau),* for defendant.

Before: ALLEN, P.J., and HOOD and W. S. WHITE,* JJ.

ALLEN, P.J. Plaintiffs appeal as of right from a March 14, 1983, order of the trial court granting defendant's motion for partial summary judgment for failure of count I of plaintiffs' complaint to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

state a claim upon which relief can be granted as a matter of law, GCR 1963, 117.2(1).

In the spring of 1980 plaintiffs, owners of a parcel of land near the intersection of Orchard Lake Road and Fifteen Mile Road in defendant township, submitted a site plan to the township planning commission for approval. On May 27, 1980, the planning commission conditionally approved the site plan which at that time conformed to Article IX, O-1 (office building districts) of the township's zoning ordinance, which allowed three-story office buildings. The site plan submitted by plaintiffs proposed the construction of an office building. After obtaining the township's approval, plaintiffs took the following preparatory steps:

a. Authorized their architects, Rossen & Neumann Associates, to conduct an architectural survey and to prepare working drawings for the construction of the office building;

b. Met with the Oakland County Road Commission on August 9, 1980, to determine the necessary dimensions of service drives to accommodate ingress and egress to and from the property and to discuss prospective modifications of Orchard Lake Road, that thoroughfare to which the subject matter property abuts;

c. Removed a residential home situated on the property to another site and, shortly thereafter, removed the basement and foundation of said residential home and provided fill to the excavation created in addition to grading the affected area;

d. Demolished an out-building located on the property;

e. Lastly, rough-graded the property, including but not limited to the removal of tree stumps and debris.

Plaintiffs' out-of-pocket costs for performance of the above work exceeded $100,000.

In addition, plaintiffs applied for the issuance of bonds from the Oakland County Economic Development Corporation. The issuance of the bonds was granted and, during the balance of 1980 and the early part of 1981, plaintiffs attempted to finalize the financing needed to fund the office building project. However, due to poor economic conditions, plaintiffs were unable to do so.

On June 12, 1981, Jared M. Schubiner contacted the planning commission via telephone and spoke with a member of that commission, indicating that plaintiffs sought renewal of the site plan. An employee stated that site plans are, ordinarily, automatically renewed, and requested that plaintiffs submit a letter to the planning department requesting renewal. Pursuant to this phone conversation, Jared M. Schubiner did, on June 15, 1981, write to Mr. Frank Reynolds, planning director, requesting a one-year extension of the site plan. Plaintiffs subsequently received notice by mail that the matter of site plan renewal had been placed on the agenda for the July 14, 1981, meeting of the planning commission.

Curious as to why his petition for renewal was not automatically granted and, further, why the matter had been placed on the agenda for July 14, 1981, when his petition for renewal of the site plan had been filed on or about June 15, 1981, Jared M. Schubiner again contacted the planning commission. Mr. Jerry Verougstraete, an employee of the planning department, advised plaintiff that, although site plan renewal was, ordinarily, automatic, because defendant was then "working on" amending the zoning ordinance to provide for a new O-1 office zone which would have a height limitation of a one-story building and a new O-2

office zone which would have a height limitation in excess of one story, it was deemed advisable to await further proceedings by defendant's planning commission prior to any renewal. This was the first notice of any nature that plaintiffs had regarding municipal action affecting their property. On July 7, 1981, the township board adopted zoning ordinance amendment 56AA-C which, in effect, limited the height of office buldings on plaintiffs' property to one story.

The planning commission met, as planned, on July 14, 1981, and item no. 5, plaintiffs' renewal petition, was called at midnight. Because of the absence of the township's attorney, the members of the commission thought it advisable to postpone discussion of plaintiffs' petition until a later date, since seven days prior to the July 14, 1981, meeting the pertinent zoning ordinance was amended to provide for two distinct office zones. Plaintiffs' renewal petition ultimately came on to be heard on July 28, 1981, at 11:45 p.m. Following a four to four vote on plaintiffs' petition, a second motion was made for renewal of site plan approval and at approximately 12:20 a.m. on July 29, 1981, the renewal request was denied by a five to three vote. Plaintiffs' petition to the township appeal board for a variance of the "site plan renewal" provision of the ordinance was denied by the appeal board on September 8, 1981.

On October 29, 1981, plaintiffs filed their complaint in the circuit court for Oakland County. Count I alleged that plaintiffs had acquired vested rights in the site plan.[1] Defendant moved for par-

---

[1] Count I, paragraph 2 of the complaint reads: "That plaintiffs did perform work of a substantial character toward erecting the subject matter project, and, therefore, did obtain vested rights in the site plan and in the zoning applicable thereto."

Count I, paragraph 3, *et seq.* describes the character and the extent

tial summary judgment (on count I) on August 31, 1982. Oral argument was heard and on March 14, 1983, the motion was granted and counts I and VI of plaintiffs' amended complaint were dismissed.[2] From the trial court's order dismissing count I, plaintiffs bring this appeal.

The instant appeal raises a single issue which may be stated as follows: Does a property owner who is granted site plan approval by a township's planning commission and proceeds to perform work described in subparagraphs (a) through (e), *supra,* acquire vested rights in the site plan approval beyond the plan's one-year period of limitation so as to bar the township's application of its amendatory zoning laws prohibiting the use of the premises as described in the site plan? Citing the benchmark case of *City of Lansing v Dawley,* 247 Mich 394, 396; 225 NW 500 (1929), defendant contends that the answer to that question is "no" because plaintiffs had not taken out a building permit or commenced construction. Citing recent Michigan cases[3] which appear to back off from the strict rule of *Dawley,* plaintiffs argue that the work described in count I of their complaint is sufficient to bar the township's subsequent amendment to its zoning law.

Commencing with the landmark case *City of Lansing v Dawley, supra, eight* principal Michigan cases have addressed the issue raised in this appeal. *Sandenburgh v Michigamme Oil Co,* 249 Mich 372; 228 NW 707 (1930); *Bloomfield Twp v*

---

of the work so performed in the same terms as appear in subparagraphs (a) through (e) of this opinion.

[2] Although summary judgment was also granted as to count VI, plaintiffs were permitted to amend that count. Thus, the propriety of the trial court's action on count I is the only issue in this appeal.

[3] *Detroit Edison Co v City of Wixom,* 382 Mich 673; 172 NW2d 382 (1969); *Dingeman Advertising, Inc v Algoma Twp,* 393 Mich 89; 223 NW2d 689 (1974).

*Beardslee,* 349 Mich 296; 84 NW2d 537 (1957); *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276; 118 NW2d 258 (1962); *DeMull v City of Lowell,* 368 Mich 242; 118 NW2d 232 (1962); *Expert Steel Co v City of Clawson,* 368 Mich 619; 118 NW2d 815 (1962); *Detroit Edison Co v City of Wixom,* 382 Mich 673; 172 NW2d 382 (1969); *Dingeman Advertising, Inc v Algoma Twp,* 393 Mich 89; 223 NW2d 689 (1974). From these cases a definitive line of authority contrary to plaintiffs' position emerges.

In *Dawley,* the defendant had obtained a building permit for the erection of a building. Before the defendant could start construction, the city passed a new ordinance precluding construction and notified the defendant that his permit to build had been revoked. The defendant filed suit claiming that, although he had not started construction, he had made substantial expenditures in time and money and had thus acquired vested property rights which could not be taken away by the subsequently enacted ordinance. Specifically, the defendant explained that he had ordered plans, paid for a survey, torn down an old barn and moved an old house to another part of the property. The Supreme Court held that such activity was not enough:

"It thus appears that the first work done upon the new building was three months after the ordinance went into effect and after the defendant had been notified that his permit had been revoked. If he had constructed the building or partially constructed it, if the work he did after the enactment of the ordinance had been done before, there would be no question as to his vested property rights. But he did nothing of a substantial character. He went no farther than to order the plans and cause a survey to be made of the lot. This

preliminary work was not sufficient to create a vested right to erect the building." 247 Mich 396-397.

In *Sandenburgh,* on May 25, 1928, the defendant was granted a building permit to construct a filling station on land then zoned for business. Construction started immediately. At noon the following day the city revoked the building permit and on August 6, 1928, rezoned the property to residential. The Supreme Court held in favor of the landowner on grounds that work commenced on construction of the building, the materials purchased and the sums expended on labor brought the case within the exception noted in *Dawley.* Clearly, the instant case does not fall within *Sandenburgh* since plaintiffs admittedly neither had acquired a building permit nor had they commenced construction on the building.

The importance of obtaining a building permit or its counterpart, a permit to operate, is illustrated in *DeMull, supra,* and *Franchise Realty, supra.* Where such a permit has been issued and substantial work called for in the permit has commenced, "vested rights" are acquired *(DeMull),* but where the application for the permit is pending and rezoning takes place before the permit is issued, no vested rights accrue *(Franchise Realty).* Likewise, where a permit to build a wall for a building has been issued and the wall actually constructed, the owner has acquired "vested rights" to complete the building. *Expert Steel Co, supra.* There, the Court distinguished *Dawley* saying:

"The 14-foot wall is supported by 3 pilasters or block piers reinforced with steel rods and set on a foundation 3-1/2 feet deep. This is construction of a substantial character sufficient to create a vested right to erect a

building. Work was commenced toward the construction, materials purchased, and sums expended for labor. Clearly, this brings the case within the exception noted in *City of Lansing v Dawley, supra,* and *Sandenburgh v Michigamme Oil Co, supra."* 368 Mich 625.

The distinction between expenditures for plans *to build* and *building* itself is well illustrated in *Beardslee, supra.* There, the defendant had done some occasional mining of gravel on lands then zoned residential and had made plans and incurred expenditures in preparation to intensively remove gravel. Before intensive operations could commence, the township zoned the area residential. The Supreme Court held in favor of the township, stating that preliminary operations are not enough:

"Mere 'preliminary' operations, *e.g.,* ordering of plans, surveying the land, removal of old buildings, are not sufficient. *City of Lansing v Dawley,* 247 Mich 394; 225 NW 500 (1929). Nor do occasional operations upon the land suffice to indicate its appropriation to a particular use." 349 Mich 307.

We disagree with plaintiffs' claim that *Detroit Edison Co v City of Wixom,* 382 Mich 673; 172 NW2d 382 (1969), weakens or backs away from the rule laid down in *Dawley, Sandenburgh, et al.* In that case, Edison, pursuant to a permit secured from the Michigan Public Service Commission, made plans to run a high voltage line through the City of Wixom. Under the permit to construct, the towers supporting the lines had to be at least 130 feet high. Edison had acquired the right of way, some 4 miles long and 200 feet wide, at a cost of $273,000, but had not commenced construction. Before construction could commence, the Wixom city council amended the city's zoning ordinance to

prohibit towers more than 100 feet high. The Supreme Court found that Edison had acquired vested rights prior to the enactment of the ordinance.

"Viewed in this chronological context, we must and do hold the ordinance to be invalid as applied to plaintiff in that said ordinance operates retroactively upon plaintiff's vested property rights and not *in futuro* as required by our previous decisions. * * * *City of Lansing v Dawley.* 247 Mich 394; 225 NW 500 (1929)." 382 Mich 690.

The Wixom portion of the line was only a small part of a transmission line running from Edison's St. Clair plant to its Monroe plant. A substantial portion of the line had already been completed at a cost of $2,400,000 when Edison started buying property for the Wixom portion. Thus, although construction had not started on the Wixom section, it had started and was well underway on a major portion of the project.[4] Accordingly, we see no weakening in the Supreme Court's earlier decisions.

The most recent of the eight cases referred to earlier in this opinion, *Dingeman Advertising, Inc v Algoma Twp, supra,* adheres to the rules laid down in *Dawley* and the successor cases discussed herein. There, the landowner purchased the land, executed a land contract, obtained a building permit, negotiated and completed an advertising contract, staked the location where a sign would be placed, caused a pole and transformer to be placed

[4] Chief Justice BRENNAN's opinion noted that Edison had acquired "about 40 miles of right-of-way from St. Clair to Pontiac and constructed 264 towers and installed 250 miles of conductors at a cost of over $3,600,000. Further, Edison acquired about 44 miles of right-of-way from its Wayne station to Pontiac, including the 4 miles in the City of Wixom." 382 Mich 684.

on the land, began construction of the sign at a shop in Traverse City, but had not commenced erecting the billboard on the property until 22 days after the township adopted the new ordinance. The landowner expended $2,645 performing these tasks. Justice COLEMAN agreed with Judge J. H. GILLIS of this Court that the above factors made the case analogous to *DeMull, supra.* Thus, in her opinion, the landowner acquired vested rights in the property. 393 Mich 102. Justices T. G. KAVANAGH and LEVIN concurred with the late Chief Justice T. M. KAVANAGH that the preparatory work completed by the landowner was of a substantial character so that the court could conclude that a valid vested nonconforming use existed in the landowner's favor. 393 Mich 99. The basis of this latter finding, however, was that "a large portion of the frame structure of the billboard was also completed prior to any action on the part of the township". 393 Mich 99. Justices WILLIAMS, SWAINSON and FITZGERALD disagreed with Justice COLEMAN's assessment of the facts stating that, "there was inadequate construction or use under Michigan law to constitute a vested nonconforming use". 393 Mich 112. Though the justices disagreed as to whether the work done prior to the passage of the ordinance was substantial enough to give "vested rights", all justices supported the analysis of the *Dawley* line of cases.

In the case before us, plaintiffs did not do any actual "construction" of the proposed three-story office building before, or after, the amendatory ordinance was enacted on July 7, 1981. Furthermore, plaintiffs did not seek a building permit pursuant to their site plan approval while the plan was in force. In short, plaintiffs had one year within which to ready their property for the three-

story office building and obtain a building permit. Plaintiffs did not do so because they could not obtain the financing needed to start construction. Inability to secure requisite financing is not the fault of the municipal authority involved. Instead, it is a normal risk of doing business which falls on the developer, who has no right to expect that a site plan will be extended or that existing zoning will be preserved until economic conditions improve.

Under all of the cases cited herein a building permit, or its counterpart, a permit to commence operations, is the *sine qua non* for obtaining "vested rights". An approved site plan is not a permit to build. The features of reliance and estoppel which may give rise to a vested right under a building permit do not necessarily arise under an approved site plan which, by statute, merely signifies that the proposed use complies with local ordinances and federal statutes. MCL 125.286e; MSA 5.2963(16e). Furthermore, the grant of a permit to build does not in itself confer on the grantee "vested rights". Actual construction must commence *(Dawley, supra, DeMull, supra)*. The making of preparatory plans, landscaping, and the removal of an existing structure is not sufficient. *(Sandenburgh, supra)*. Where the building permit has been applied for but has not been issued, "vested rights" are not acquired even though substantial sums have been expended by the applicant. *(Franchise Realty, supra)*. Given the current state of Michigan authority, there is simply no way this Court can conclude that plaintiffs acquired a vested right to a nonconforming use of their land.

Affirmed. No costs, a question of public importance being involved.