# STATE OF MICHIGAN

# COURT OF APPEALS

WEBSTER TOWNSHIP,

      Plaintiff/Counter-Defendant-
      Appellee,

and

JOHN SCHARF, ANDREA SCHARF, DUNCAN
J. J. MAGOON AND MARILYN J. MAGOON
REVOCABLE TRUST, and SUBHAM
HOLDINGS, L.L.C.,

      Intervening Plaintiffs-Appellees,

v

DANIEL WAITZ, LAURA WAITZ, and
COTTONWOOD BARN, L.L.C.,

      Defendants/Counter-Plaintiffs-
      Appellants.

UNPUBLISHED
June 7, 2016

No.   325008
Washtenaw Circuit Court
LC No.   2013-000948-CZ

Before:  O'CONNELL, P.J., and OWENS and BECKERING, JJ.

PER CURIAM.

Defendants, Daniel Waitz, Laura Waitz, and Cottonwood Barn, L.L.C. (collectively, the Waitzes) appeal as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) to plaintiffs, Webster Township and the individual plaintiffs (collectively, the Township), and permanently enjoining Cottonwood Barn from operating as a commercial event barn.  We affirm.

## I.  FACTUAL BACKGROUND

On July 25, 2012, Daniel Waitz met with the Township's zoning administrator, Bruce Pindzia, to discuss the proposed use of a property that they were considering purchasing.  On August 2, 2012, Pindzia sent the Waitzes a letter:

-1-

Thank you for meeting with me on July 25, 2012 to discuss a proposed land use at [the property]. These two parcels are adjacent to one another. I understand that you desire to host wedding receptions and similar events in the barn. I further understand that the occurrence of such events would be seasonal. You anticipate typically scheduled for the warmer months. Please consider this communication as your authorization to proceed with this concept based upon the Zoning Ordinance currently in effect.

* * *

The home is considered the principal structure on the subject property. The primary use of the property is residential. The barns are defined as an accessory structure to the home. The hosting of wedding receptions and similar gatherings is considered to be an accessory use which is incidental and subordinate to the single-family dwelling (§ 9.05.A.2.c.). Furthermore, you have adequate space for on-site parking. Impacts to the neighboring parcels are not anticipated.

However, on August 27, 2012, Pindzia indicated that he had follow-up questions about the "intensity" of the Waitzes' anticipated activities, including how often the Waitzes intended to rent the barn, how many guests would be expected, whether the activity would be seasonal or year-round, whether they would have additional employees, what hours the barn would operate, whether there would be indoor or outdoor entertainment, and whether the single-family home on the property would be occupied or vacant. On August 31, 2012, the Waitzes responded that they expected events to be year-round, "rented every weekend through the summer and probably not so often in winter," with "anywhere from 25-200 guests at any one time." They might hire "part-time high school kids to help set up chairs, tables, etc." There would likely be a band or DJ at "many of the events," and the band or DJ would be "inside or outside depending on the weather." Finally, the Waitzes intended that the house would be occupied.

At the end of his responsive letter, Daniel indicated:

I'm a little concerned about the timing of this as we are expected to close within 30 days. If you foresee any issues I really need to know right away.

Webster Township Supervisor John Kingsley emailed the Waitzes on September 19, 2012:

I would not wish for you to close on this property with the feeling that you would be permitted to as you have purposed [sic] without many things being clarified.

The Waitzes purchased the barn on October 4, 2012. The Waitzes acquired a repair building permit in February 2013 through Washtenaw County to add a dormer, replace the roof, and fill some openings, with an estimated cost of $25,000 in construction. The Township emailed Washtenaw County, stating "Webster Township understands the project to consist of replacing the barn roof and the addition of dormers to the building. Since the building footprint won't change, a township zoning permit is not required."

In April 2013, the Waitzes sought to expand the original building permit to include interior structural alterations. Pindzia emailed Washtenaw County, stating in pertinent part, "I

-2-

understand that there will be floor, partition, electrical and plumbing work done on the interior. I further understand that the purpose behind these improvements is to create an event venue suitable for leasing. Based on the current Zoning Ordinance, I have no difficulty with this."

Pindzia stated that in late June 2013, he began receiving complaints from neighbors about the intensity of the use on the property. Pindzia again asked the Waitzes to describe their use of the property. On July 25, 2013, the Waitzes responded that they expected a rental every weekend from late spring to early fall, with "[f]ewer events during winter and during the week," and that the barn would operate year-round. He indicated that "[M]ost weddings seem to have about 150 people. Some may be 300 but most are 150." He intended to hire a parking attendant and possibly a caretaker. He expected to have both indoor and outdoor entertainment that would end by 11 p.m., and everyone would leave by midnight. Activities included rehearsal dinners on Friday evenings and cleanup on Sunday mornings.

On September 3, 2013, Pindzia notified the Waitzes of a potential ordinance violation by a letter that stated in pertinent part:

> My correspondence to you dated August 2, 2012, indicated that your proposal to host wedding receptions at the above addresses would be acceptable if it were conducted as an accessory use to the single family dwelling on the premises. Copies of that correspondence were distributed to the Township Board and Planning Commission, which resulted in a number of questions being raised about the intended scope and intensity of your proposed accessory use.

> Upon clarification of your intentions, it appeared that you were proposing much more than an "accessory use" within the barn on the premises. . . .

> * * *

> According to your July 25, 2013 email, you propose to use the premises for events most every weekend from late Spring through early Fall, and expect from 150 to 300 people in attendance at each event. You propose to have live, amplified music both inside and outside during the events into the late evening. You also propose to have other events on the premises during the week. With the use you are proposing, the residence on the property would no longer be the principal use of the property. Instead of being "clearly incidental to," "customarily found in conjunction with," and "subordinate to" the single family residence, the use you are now proposing would itself be the principal use of the premises.

Pindzia averred that he received a complaint on September 10, 2013, that the Waitzes were engaging in unauthorized work on the property. Pindzia notified the Waitzes to stop constructing a parking lot because they had not filed an approved site plan. On September 18, 2013, the Waitzes sought to further revise their building permit to include "[r]emodeling the entire barn inside and outside," with an estimated cost of $525,000. The Township filed its complaint in this action on September 25, 2013, alleging that the Waitzes' use of the property violated the Township's zoning ordinance. The individual plaintiffs intervened on similar grounds. The Waitzes counterclaimed for violations of equal protection, due process, and

-3-

equitable estoppel, contending that because the Township had approved building permits, it could not now seek to enforce the ordinance. The Waitzes also contended that they had a vested right to use the property as an event barn.

The Township and individual plaintiffs filed a joint motion for summary disposition under MCR 2.116(C)(8) and (10), alleging that there were no questions of material fact regarding whether the Waitzes' use of the property violated the zoning ordinance. In response, the Waitzes contended that several issues of material fact precluded summary disposition. The trial court granted summary disposition under MCR 2.116(C)(10) in an extensive written opinion:

> Whether or not the house is occupied, it is clear that event barn use is a commercial operation that exceeds the residential use of the property. The noise, disruption, traffic and activity of which the plaintiffs complain have no connection to the house as a residence. The guests at the events have no relation, generally, to the occupants of the house. The investment in the property was solely, or almost solely, for the purpose of operating a non-agricultural business out of the barn; the owners of the business do not reside on the property.

* * *

> As things turned out, with the benefit of hindsight, the Court would agree with defendants that no preliminary certificate would have been necessary had the event barn really been an accessory use to the residential use of the property. The record shows that the event barn became the principal or primary use, and it was, in fact a change in the type of use—or at least in the type of occupancy—of the property. Thus, defendants were required to obtain a certificate.

> It is not clear that defendants should have known a preliminary certificate was necessary. . . . If a proposed use is a change in use, or an extension of a nonconforming use, the Ordinance requires an application, site plan and preliminary certificate—it is not permissive, and does not relieve a party who acts in good faith from the obligation of complying with the Ordinance.

* * *

> Defendants, however, have not provided any evidence, such as an affidavit from a person with knowledge of Webster Township's practices, to support their assertion that it is common for the Township, or townships in general, to provide a letter to serve as a certificate of zoning compliance. The letter was not provided in response to a written application. Defendants do not claim that they posted either Pindzia's letter or the April 2013 email on the property during the construction activities, which they would have been required to do with a preliminary certificate of zoning compliance. Even if the [August 2, 2012 letter] was intended by Pindzia to be the preliminary certificate, Pindzia had no authority to issue it without the application and site plan having been filed and it was, therefore, not a *valid* preliminary certificate.

* * *

> Considering all the facts submitted and the circumstances as a whole, the Court finds that defendants cannot establish that they reasonably relied on the Township's representation that the event barn, as it developed, was a permitted or accessory use in the AG district.

* * *

> Whatever general approval the Township gave defendants to proceed with the project described in the February 2013 permit as an accessory use does not constitute estoppel to enforce the ordinance against what became much greater than that. . . .

The trial court permanently enjoined the Waitzes from operating a commercial event barn. The Waitzes now appeal.

## II. STANDARDS OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When a party moves the trial court for summary disposition under MCR 2.116(C)(8) and (10), and the trial court considered documents outside the pleadings when deciding the motion, we review the trial court's decision under MCR 2.116(C)(10). *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007).

A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." The trial court must consider all the documentary evidence in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

This Court reviews de novo the property interpretation of zoning ordinances. *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003). This Court applies the rules of statutory construction when interpreting a zoning ordinance. *Kalinoff v Columbus Twp*, 214 Mich App 7, 10; 542 NW2d 276 (1995). We also review de novo the application of equitable doctrines, such as estoppel. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005).

## III. ACCESSORY USE

The Waitzes contend that the trial court improperly determined that their use of the barn was a commercial use under the Township's ordinances. We disagree.

The Township's zoning ordinance provides that uses not specifically permitted in the ordinance may be permitted if they are an "accessory use," Webster Township Zoning Ordinances, § 1.20, which the ordinance defines as a use "clearly incidental to, customarily found in conjunction with, subordinate to, and located on the same zoning lot as a permitted

-5-

use . . . .", Ordinances, § 2.10. Permitted uses within the agricultural district include single family dwellings, farms or farmer's market, farm operations for crops or animals, home occupation, licensed home-based occupations, public utilities, seasonal agritourism,[1] private stables, and state licensed residential facilities. Ordinances, § 9.10(B).

In this case, the barn's use was not "subordinate to" the property's use as a single-family dwelling. Setting aside the questions of fact that did exist—including whether the home was occupied—the property's actual use as an events venue far outstripped its use as a single-family dwelling. While families occasionally host weddings and gatherings in their backyards and outbuildings, the Waitzes provide no evidence that such gatherings are a year-round weekly occurrence at single-family homes. Most tellingly, in September 2013, the Waitzes began constructing a parking lot. Single family homes have driveways, not parking lots. There is no question that the property's character as a commercial events venue overtook its character as a single-family dwelling.

We conclude that the trial court properly determined that there was no question of fact regarding whether the Waitzes' use of the barn was an accessory use.

## IV. VESTED RIGHTS

The Waitzes contend that they acquired vested rights to operate a commercial events barn through the issuance of building permits. We disagree.

To have a vested right in a particular land use, a property owner must acquire a building permit and do anything of a "substantial character towards the construction" of the project for which the permit was obtained. *Lansing v Dawley*, 247 Mich 394, 396-397; 225 NW 500 (1929). "[A] building permit, or its counterpart, a permit to commence operations, is the *sine qua non* for obtaining 'vested rights.' " *Schubiner v West Bloomfield Twp*, 133 Mich App 490, 501; 351 NW2d 214 (1984). The building permit must be validly issued, and the holder must have commenced work before being informed of a conflicting ordinance. *Dingeman Advertising, Inc v Algoma Twp*, 393 Mich 89, 98-99; 223 NW2d 689 (1974). "[I]n order that that a nonconforming use may vest, equity demands that, at the very least, all actions which have been undertaken and completed by the holder of the permit prior to actual notification to him of the revocation of such permit must be considered." *Id*. at 99.

In this case, the February and April 2013 building permits sought roof replacement and interior electrical and plumbing work that were consistent with accessory use of the barn. The Township has never contended that using a barn to host events may never be an accessory use— only that, in this case, the Waitzes' use of the barn became commercial. It was not until the September 18, 2013 building permit that the Waitzes sought to do substantial remodeling,

---

[1] While the Waitzes contend that holding weddings in a barn can constitute agritourism, even if this was the case, there is no question that the barn operated year-round rather than seasonally.

including building a parking lot.[2]  Pindzia's approval of the Waitzes' concept *specifically* mentioned the barn having sufficient on-site parking for the proposed use.  The September 2013 building permit was issued *after* Pindzia informed the Waitzes that their use was not consistent with the ordinance and *after* the Township issued a stop work order.  The Waitzes cannot show they had a vested right in a commercial events barn at that time.  See *Dingeman*, 393 Mich at 99. We conclude that the building permits in this case did not lead the Waitzes to acquire a vested right in the commercial operation of the barn.

## V.  ESTOPPEL AND LACHES

The Waitzes contend that Pindzia's August 2, 2012 email was a certificate of zoning compliance and that the trial court erred when it determined that the facts in this case did not justify estopping the Township from enforcing its zoning ordinance.  We disagree.

We reject the Waitzes' argument that a question of fact exists regarding whether Pindzia's initial email was a certificate of zoning compliance.  In this case, the Township's zoning ordinance clearly outlines the steps necessary to acquire a certificate of zoning compliance.  Ordinances, § 3.80.  These steps include filing a formal permit application, paying an application fee, submitting a site plan, and displaying a certificate of zoning compliance at the construction site.  Ordinances, §§ 3.80(B) and (E).  Because there are no facts in the record to indicate that the Waitzes followed these steps, there is no question of fact regarding whether Pindzia's email was actually a certificate of zoning compliance.

Whether the Waitzes reasonably relied on Pindzia's email is a separate question.  An equitable estoppel is appropriate when:

> (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts. . . . [*Howard Twp Bd of Trustees v Waldo*, 168 Mich App 565, 575; 425 NW2d 180 (1988) (quotation marks and citation omitted).]

"The general rule is that zoning authorities will not be estopped from enforcing their ordinances absent exceptional circumstances."  *Id*.  Compelling circumstances may exist if the parties acted in good faith, proper notice was given and a building permit was posted on the premises, the building is specialized and construction work on it would put anyone in the area on notice that something unusual was taking place, and the building is a specialty building "of otherwise doubtful utility."  See *Pittsfield Twp v Malcolm*, 375 Mich 135, 148; 134 NW2d 166 (1965).

We agree with the trial court that the Waitzes cannot establish that they reasonably relied on the Township's communications before they engaged in significant construction on the barn.

---

[2] The Waitzes had already begun constructing the parking lot at least as of September 10, 2013. It is difficult to imagine that they relied on the building permit not yet issued at that point in time.

While Pindzia initially indicated that the Waitzes' proposed use of the barn was "an accessory use which is incidental and subordinate to the single-family dwelling," the extensive follow-up that took place indicated that whether the ordinance permitted the proposed use of the barn "would depend on the intensity of activities in the barn." On September 19, 2012, before the Waitzes closed on the property, the Township emailed them that they would not be able to engage in their proposed use of the property without "many things being clarified." No reasonable mind could conclude that, after being informed that further clarification was necessary, the Waitzes could reasonably believe that Pindzia's email was a valid certificate of zoning compliance and that their proposed use was an accessory use. It is clear from the documentary evidence that whether the Waitzes' use of the barn was an accessory use was not, at that point, determined. Any other belief was not a justified belief.

Additionally, the trial court properly concluded that exceptional circumstances do not exist in this case.

The Waitzes contend that the fact that they spent over $750,000 militates in favor of equitable estoppel. As previously discussed, before Pindzia's September 3, 2013 notice of ordinance violation, the Waitzes had approved building permits for roof replacement, dormers, and work on the floors, electrical, and plumbing in an expected amount of $25,000. The Waitzes did not seek to expand their building permit to include interior and exterior remodeling until September 18, 2013, after Pindzia issued a stop work order on September 10, 2013. Even if the Waitzes did expend $750,000 on the barn, there is no indication that this amount was spent in reasonable reliance on the February and April 2012 building permits. Those building permits that were issued concerned $25,000 in repairs, substantially less than the September 2013 building permit.

Regarding the remainder of the factors, the building was not a specialized construction. Reroofing a barn and updating its interior is not such an uncommon event that it would put the community on notice that something unusual was taking place. The Waitzes provided no evidence that they posted the building permits on the premises. Even presuming that the Waitzes acted in good faith, we conclude that the circumstances of this case do not present an exceptional or compelling circumstance to prevent the Township from enforcing the ordinance.

We also reject the Waitzes' unpreserved laches claim. We review unpreserved issues for plain error affecting the party's substantial rights. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014). "If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches." *Knight v Northpointe Bank*, 300 Mich App 109, 114; 832 NW2d 439 (2013). In this case, there is no indication that the Township waited a substantial period of time to enforce their rights. Accordingly, we conclude that the trial court did not plainly err by failing to apply the doctrine of laches.

## VI. ADDITIONAL ISSUES

The Waitzes contend that the trial court applied an improper standing for deciding a motion for summary disposition and that several issues of material fact remain. We disagree.

First, the Waitzes contend that issues of fact remained regarding whether the Township selectively enforced the ordinance on events barns. The Waitzes failed to provide any facts that would show an issue of material fact. To survive a motion for summary disposition, once the nonmoving party has identified issues in which there are no disputed issues of material fact, the burden is on the plaintiff to show that disputed issues exist. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The nonmoving party "must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. at 362. Here, the Waitzes failed to provide any facts to support these allegations.

Second, while the trial court stated at one point that it was relying on Pindzia's affidavit, it is clear from reading the trial court's decision in context that it was actually relying on the documentary evidence of Pindzia's emails. Third, as can be seen from the previous excerpt from the trial court's opinion, it determined that whether the property was occupied or not did not affect its analysis. We conclude that the trial court did not engage in fact-finding under its analysis. The remainder of the Waitzes' issues with the trial court's analysis are similarly lacking in merit.

We conclude that the trial court applied a proper standard for a motion for summary disposition and did not engage in improper fact-finding.

We affirm.

/s/ Peter D. O'Connell